**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KYLE HARRY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1269** |
| **TRAVIS DAY, WARDEN** | **SECTION: "J"(3)** |

## REPORT AND RECOMMENDATION

Petitioner, Kyle Harry, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

On January 11, 2008, petitioner was convicted of second degree murder under Louisiana law.[1]  On February 7, 2008, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2]  The Louisiana First Circuit Court of Appeal then affirmed his conviction and sentence on June 12, 2009,[3] and denied his application for rehearing on July 8, 2009.[4]  On April 5, 2010, the Louisiana Supreme Court refused to consider his related writ application because it was not timely filed.[5]

On an unknown date thereafter, petitioner filed an application for state post-conviction relief.[6]  That application was denied on January 25, 2013.[7]

---

[1] State Rec., Vol. 4 of 9, transcript of January 11, 2008, p. 50; State Rec., Vol. 4 of 9, minute entry dated January 11, 2008; State Rec., Vol. 1 of 9, jury verdict form.

[2] State Rec., Vol. 2 of 9, transcript of February 7, 2008; State Rec., Vol. 4 of 9, minute entry dated February 7, 2008.

[3] State v. Harry, No. 2008 KA 2483 (La. App. 1st Cir. June 12, 2009); State Rec., Vol. 1 of 9.

[4] State v. Harry, No. 2008 KA 2483 (La. App. 1st Cir. July 8, 2009); State Rec., Vol. 6 of 9.

[5] State v. Harry, 31 So. 3d 353 (La. 2010); State Rec., Vol. 6 of 9.

[6] For reasons the state cannot explain, no copy of that application appears in the state court record.  See Rec. Doc. 10, p. 10.

[7] State Rec., Vol. 4 of 9, Judgment on Post Conviction Relief with Reasons dated January 25, 2013.

On March 1, 2016, petitioner then filed a second application for post-conviction relief with the state district court.[8]  That application was denied on June 6, 2016.[9]  The Louisiana First Circuit Court of Appeal thereafter refused to consider petitioner's related writ application because it did not comply with the applicable court rules.[10]

On August 5, 2019, petitioner filed a third post-conviction application with the state district court,[11] which he thereafter supplemented on September 30, 2019,[12] and May 27, 2020.[13]  That application was denied on August 19, 2020.[14]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on December 21, 2020,[15] and by the Louisiana Supreme Court on April 13, 2021.[16]

On June 19, 2021, petitioner filed the instant federal application asserting two claims concerning the empaneling of the petit jury.[17]  The state filed a response arguing that the application should be dismissed as untimely,[18] and petitioner filed a reply.[19]  For the following reasons, the application is indeed untimely.

---

[8] State Rec., Vol. 5 of 9.

[9] State Rec., Vol. 4 of 9, Judgment on Post Conviction Relief with Reasons dated June 6, 2016.

[10] State v. Harry, No. 2016 KW 1279, 2016 WL 7217729 (La. App. 1st Cir. Dec. 12, 2016); State Rec., Vol. 7 of 9.

[11] State Rec., Vol. 5 of 9.  That application consisted of "A Second or Subsequent Uniform Application for Post-Conviction Relief," "Memorandum in Support of Application for Post-Conviction Relief," and a "Motion to Declare Unconstitutional the Majority Verdict Rule, Louisiana Constitutional Article I § 17, (1974-2018) Which Underpins Movant's 2008 Conviction."

[12] State Rec., Vol. 5 of 9.

[13] State Rec., Vol. 5 of 9.

[14] State Rec., Vol. 4 of 9, Judgment on Post Conviction Relief with Reasons dated August 19, 2020.

[15] State v. Harry, No. 2020 KW 0995, 2020 WL 7490252 (La. App. 1st Cir. Dec. 21, 2020); State Rec., Vol. 8 of 9.

[16] State v. Harry, 313 So. 3d 1252 (La. 2021); State v. Harry, 313 So. 3d 1253 (La. 2021); State Rec., Vol. 9 of 9.

[17] Rec. Doc. 3.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner has declared under penalty of perjury that his federal application was placed in the prison mailing system on June 19, 2021.  Rec. Doc. 3, p. 9.

[18] Rec. Doc. 10.

[19] Rec. Doc. 11.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsections B and C of 28 U.S.C. § 2244(d)(1) clearly do not apply in the instant case because petitioner does not allege the existence of either a state-created impediment or a newly recognized constitutional right. As for the remaining subsections, the state argues that Subsection A applies, while petitioner argues that Subsection D is instead applicable. Ultimately, however, that disagreement is of no consequence – it has not been established that the application would be timely under either subsection.

## Subsection A

Regarding Subsection A, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). **However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."** Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. **As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal.** See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

Here, as noted, petitioner was convicted on January 11, 2008,[20] and sentenced on February 7, 2008.[21] He timely appealed, and the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence on June 12, 2009,[22] and denied his application for rehearing on July 8, 2009.[23] Petitioner then had thirty days after that denial of rehearing, i.e. until August 7, 2009, to file a writ application seeking review by the Louisiana Supreme Court.[24] However, because

---

[20] State Rec., Vol. 4 of 9, transcript of January 11, 2008, p. 50; State Rec., Vol. 4 of 9, minute entry dated January 11, 2008; State Rec., Vol. 1 of 9, jury verdict form.

[21] State Rec., Vol. 2 of 9, transcript of February 7, 2008; State Rec., Vol. 4 of 9, minute entry dated February 7, 2008.

[22] State v. Harry, No. 2008 KA 2483 (La. App. 1st Cir. June 12, 2009); State Rec., Vol. 1 of 9.

[23] State v. Harry, No. 2008 KA 2483 (La. App. 1st Cir. July 8, 2009); State Rec., Vol. 6 of 9.

[24] The Louisiana Supreme Court's rules provide:

petitioner's counsel missed that deadline, the Louisiana Supreme Court refused to consider his subsequently filed writ application, stating: "Writ not considered. Not timely filed."[25]

As a result, petitioner's state criminal judgment became final no later than August 7, 2009, upon the expiration of his time for seeking further direct review. Under Subsection A, his federal limitations period would then have commenced at that point and expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Petitioner's first filing during the applicable one-year period was the aforementioned untimely writ application filed with the Louisiana Supreme Court. However, because that writ application sought further **direct** review (not post-conviction or collateral review), it did not trigger statutory tolling under § 2244(d)(2). The United States Fifth Circuit Court of Appeals has expressly and conclusively held: "Under that provision it is only state **post-conviction relief proceedings** that cause tolling." Butler, 533 F.3d at 318 (emphasis added). Accordingly, an untimely direct-review writ application, such as the one in the instant case, does not toll the federal

---

An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs (but not when the court has merely granted an application for purposes of further consideration), or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal; however, **if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing.** No extension of time therefor will be granted.

Louisiana Supreme Court Rule X, § 5(a) (emphasis added).

[25] State v. Harry, 31 So. 3d 353 (La. 2010); State Rec., Vol. 6 of 9.

limitations period.  See id. at 320 ("Filings that are not part of habeas or post-conviction proceedings do not invoke Section 2244(d)(2) tolling.... The only document Butler filed related to his untimely direct review application was the application itself, which is indisputably a part of his direct appeal proceedings."); Etienne v. Vannoy, Civ. Action No. 20-1979, 2021 WL 5828109, at *3 (E.D. La. Nov. 12, 2021), adopted, 2021 WL 5826288 (E.D. La. Dec. 8, 2021); Johnson v. Cain, Civ. Action No. 12-974, 2013 WL 5961101, at *4 (E.D. La. Nov. 7, 2013).

At this point, the timeliness analysis becomes more complicated because it is unclear from the state court record exactly when petitioner filed his first state post-conviction application.  As noted above, the state court record does not contain a copy of that application.  Moreover, although there is reason to believe that it was not filed until 2011,[26] neither this Court – nor the state in its response – can say that definitively.  Therefore, out of an abundance of caution, and because petitioner's federal application would be untimely regardless, the Court will simply employ a generous assumption that no portion of the federal limitations period had expired prior to that filing.

The next issue is when tolling based on that application then ended, but, fortunately, that issue is less complicated.  After that application was denied on January 25, 2013,[27] petitioner then had thirty days to challenge that denial by filing a related writ application with the Louisiana First Circuit Court of Appeal.  See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-

---

[26] Although the state court record does not contain a copy of the first post-conviction application, it does contain a related ruling by the Louisiana First Circuit Court of Appeal which references a 2011 filing date.  See State v. Harry, No. 2012 KW 1122 (La. App. 1st Cir. July 27, 2012) ("The trial court should proceed toward disposition of relator's application for post-conviction relief, filed on August 12, 2011."); State Rec., Vol. 4 of 9.
[27] State Rec., Vol. 4 of 9, Judgment on Post Conviction Relief with Reasons dated January 25, 2013.

3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007). However, he filed no such writ application, and so his first post-conviction application ceased to be "pending" – and tolling based on that application ended – when that thirty-day deadline expired on **February 25, 2013**. See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state post-conviction application ceases to be pending for tolling purposes when the time for seeking supervisory review expires).[28] Further, because the Court has employed the generous assumption that no portion of the limitations period elapsed prior to the filing of the first post-conviction application, his one-year federal limitations period under Subsection A would then have expired no later than **February 25, 2014**, unless further tolling is available.

Clearly, petitioner is not entitled to any further statutory tolling, because he had no other applications for post-conviction or collateral review pending in the state courts at any time on or before February 25, 2014.[29]

However, the Court must also consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). Nonetheless, it is clear that "equitable tolling is unavailable in most cases ...." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations may be equitably tolled "in rare and exceptional circumstances"). Indeed, the Supreme Court held that "a

---

[28] In this case, the thirtieth day of the period fell on a Sunday, and, therefore, petitioner had until Monday, February 25, 2013, to file a writ application with the Louisiana First Circuit Court of Appeal. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

[29] Although he subsequently filed a state post-conviction applications in 2016 and 2019, those filings did not toll the federal limitations period because it had already expired. State court applications filed after expiration of the federal limitations period are of no consequence for tolling purposes. Simply put: once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted).

In any event, petitioner bears the burden of proof to establish entitlement to equitable tolling, Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002), and he has not met that burden. Rather, he simply suggests in passing that equitable tolling is warranted and cites Wion v. Quarterman, 567 F.3d 146 (5th Cir. 2009).[30]  However, he does not explain why he believes Wion supports his bid for equitable tolling, and it is not apparent to this Court – especially given that the Fifth Circuit in Wion **reversed** the trial court's finding that equitable tolling was warranted and held that "tolling – equitable or otherwise – should **not** apply" in that case. Id. at 148 (emphasis added).

Finally, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013).  In Perkins, the United States Supreme Court held:

> This case concerns the "actual innocence" gateway to federal habeas review applied in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and further explained in House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006).  In those cases, a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims.  Here, the question arises in the context of 28 U.S.C. § 2244(d)(1), the statute of limitations on federal habeas petitions prescribed in the Antiterrorism and Effective Death Penalty Act of 1996.  Specifically, ... can the time bar be overcome by a convincing showing that [the petitioner] committed no crime?
>
> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations.  We caution, however, that tenable actual-innocence gateway pleas are rare:  "[A]

---

[30] Rec. Doc. 3-1, pp. 2-3; Rec. Doc. 11, p. 4.

> petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329, 115 S.Ct. 851; see House, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the Schlup standard is "demanding" and seldom met).

Perkins, 569 U.S. at 386.

In the instant case, petitioner has not invoked Perkins.  However, in the event he does so in any objections to this Report and Recommendation, the undersigned finds that he has not made the showing required under Perkins for the following reasons.

As noted, petitioner was convicted of second degree murder.  Louisiana law defines that offense as, inter alia, "the killing of a human being … [w]hen the offender has a specific intent to kill or to inflict great bodily harm."  La. Rev. Stat. Ann. § 14:30.1(A)(1).  "Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act.  Specific intent need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant."  State v. Golson, 658 So. 2d 225, 230 (La. App. 2d Cir. 1995) (citations omitted).  "Specific intent to kill or inflict great bodily harm can be inferred from a shooting which occurs at a fairly close range."  State v. Harris, 859 So. 2d 690, 693 (La. App. 4th Cir. 2003); accord Robinson v. Cain, Civ. Action No. 07-3651, 2010 WL 3170257, at *10 (E.D. La. Mar. 19, 2010), adopted, 2010 WL 3170081 (E.D. La. Aug. 6, 2010).

In assessing a claim of actual innocence, a court normally first examines the evidence presented at trial and on which the petitioner's conviction was based.  See, e.g., Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F. App'x 474 (5th Cir. 2016); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La.

Sept. 17, 2014).  In the instant case, the Louisiana First Circuit Court of Appeal summarized that

evidence as follows:

> On June 22, 2005, the Bogalusa Police Department was dispatched to an apartment at the O'Neal Apartment Complex on Magee Street in connection with a shooting.  Inside the bathroom of the apartment, the lifeless body of the victim, Anthony "G-Slim" Brown, was found wedged between the toilet and the wall.  He had multiple gunshot wounds all over his body.  A homicide investigation began.
>
> In connection with the investigation, the police spoke with two neighbors, Anna Turner and Donald Ray Sampson.  Sampson stated that as he was cutting the grass at his home across the street from the O'Neal Apartments, he observed a white man and a black man approach the victim's apartment.  The white man kicked in the door and both men entered the apartment.  Shortly thereafter, Sampson heard two or three gunshots.  The men fled the apartment and left the scene in a white pickup truck.  Sampson walked toward the apartment to see what had transpired.  A different black male, subsequently identified as Chris Miller, ran out of the victim's apartment and asked Sampson to call the police.
>
> Anna Turner told the police that she had been inside her apartment when she heard the gunshots.  She looked out of the window and saw a white male and a black male exiting the victim's apartment.  Turner watched as both men left the area in a white truck.  Turner initially identified the white male as an individual named "Jeremy Meyn."  However, it was later determined that Jeremy Meyn was actually incarcerated in Washington Parish Jail on the date of the shooting.
>
> Upon realizing that Jeremy Meyn and Blake Barnes (a white male) possessed similar physical characteristics, the investigating officers decided to question Barnes.  Barnes admitted to being present at the victim's apartment on the day in question.  He told the police that he had gone there earlier that day with Byron Johnson.  Barnes claimed he was robbed of $10.00 during the visit.  He also told the police that Johnson shot the victim.  In response to this information, Johnson was questioned by the authorities.  Johnson admitted that he went to the victim's apartment with Barnes.  He stated that he, the victim, and Damion Dyson set Barnes up to be robbed of a pound of marijuana, not $10.00.  Johnson denied shooting the victim.  Johnson was later arrested and charged with armed robbery.  When questioned again, Barnes changed his story.  He admitted that he was robbed of drugs, not money, and that Johnson did not shoot the victim.  Frightened, Barnes indicated that he could not reveal the identity of the actual shooter.
>
> Several months later, Barnes was questioned again.  This time, Barnes, in the presence of his attorney, named the defendant (a black male) as the shooter.  Barnes explained that, when he initially went to the victim's house with Byron Johnson, he was robbed of some marijuana he received from the defendant.  Barnes claimed that he told the defendant about the robbery and explained that he suspected that the victim and Johnson were involved.  Barnes and the defendant returned to the victim's apartment.  The defendant instructed Barnes to kick in the door.  Barnes

complied and he and the defendant entered the apartment. The defendant asked the victim, "where is my f'n dope?" According to Barnes, the victim told the defendant he would go and get the drugs, but the defendant shot him before he could do so. Barnes ran from the residence, returned to the truck and waited there for the defendant. Barnes claimed he initially implicated Johnson as the shooter because he feared for his life and the lives of his family.

Chris Miller told the police that he was inside the apartment with the victim when the men arrived. According to Miller, he jumped into the closet after the door was kicked in. From the closet, Miller observed the black male and white male enter the apartment. He stated that the black male did the shooting.

The evidence presented at trial established that the defendant owned a white pickup truck.[31]

Next, the Court must consider the new evidence of actual innocence offered by the habeas petitioner. Specifically, the United States Supreme Court has explained that, in order to assert a credible claim of actual innocence, a petitioner is required "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Here, however, petitioner has presented no new evidence whatsoever to show that he is actually innocent. Therefore, he cannot meet "the threshold requirement" for Perkins to apply, i.e. a showing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Perkins, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329). Accordingly, Perkins does not aid him.

In summary: Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the Perkins "actual innocence"

---

[31] State v. Harry, No. 2008 KA 2483, pp. 2-4 (La. App. 1st Cir. June 12, 2009); State Rec., Vol. 1 of 9.

exception applies, his federal application for habeas corpus relief had to be filed no later than **February 25, 2014**, in order to be timely under Subsection A.  Because his application was not filed until **June 19, 2021**, it would be untimely under that provision.

### Subsection D

Petitioner, however, argues that Subsection D applies in his case.  He states:

> Petitioner's instant application for writ of habeas corpus is timely.  This request for habeas relief is predicated upon newly discovered evidence/information that was discovered in the *voir dire* transcripts, and **Petitioner received his *voir dire* transcripts on August 22, 2019**.  Petitioner filed an application for post-conviction relief citing errors discovered in the *voir dire* transcript on September 30, 2019.  Petitioner exhausted these claims through the state courts …, and with equitable tolling (compare *Wion v. Quarterman*, 567 F.3d 146 (5th Cir. 4/28/2009)), **this instant filing is within the one year period from the date Petitioner received the *voir dire* transcript**.  See, 28 U.S.C. § 2244(d)(1)(D).[32]

However, even if petitioner is correct in arguing that Subsection D is controlling, he has not established that his federal application would be timely under that subsection.

As noted above, Subsection D delays the commencement of the one-year federal limitations period until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1).  Based on the foregoing argument, it is evident that petitioner believes that his limitations period under Subsection D would therefore have commenced no earlier than August 22, 2019, the date on which he actually received the *voir dire* transcript and discovered the purported errors.  But that is not the way Subsection D functions.  Rather:  "The relevant inquiry under Subsection D is not the date the fact in question was **actually discovered**, but the date it **could have been discovered with reasonable diligence**."  Roberts v. Cain, Civ. Action No. 14-2119, 2016 WL 7438489, at *6 (E.D.

---

[32] Rec. Doc. 3-1, pp. 2-3 (emphasis in original).

La. Dec. 27, 2016) (emphasis added), <u>certificate of appealability denied</u>, No. 17-30020, 2017 WL

6811900 (5th Cir. Oct. 12, 2017), <u>cert. denied</u>, 138 S. Ct. 1266 (2018).  And petitioner has made

no effort to establish that date.

  That is fatal, because petitioner bears the burden to establish that his federal application is

timely under Subsection D.  As another court recently explained:

>   Petitioner has the burden to establish that his federal habeas application is
> timely. … Under § 2244(d)(1)(D), the federal limitations period begins to run when
> the factual predicate of the claims could have been discovered using due diligence,
> not when it was actually discovered.  The "test of due diligence under section
> 2244(d)(1)(D) is objective, not subjective."  **Petitioner must show why he was
> unable to discover the factual predicate at an earlier date.  Merely alleging
> that he did not know the facts underlying his claim(s) is insufficient.**  Several
> courts have equated the exercise of due diligence to a rule of "inquiry notice."  In
> other words, when should a petitioner "have learned of the new evidence" had he
> "exercised reasonable care."  The due diligence standard "requires the petitioner to
> exercise the consideration expected of a reasonably prudent person under similar
> circumstances."

<u>Matthews v. Louisiana</u>, Civ. Action No. 18-589, 2021 WL 4484991, at *3 (M.D. La. Aug. 18,

2021) (emphasis added; footnotes omitted), <u>adopted</u>, 2021 WL 4480990 (M.D. La. Sept. 29, 2021);

<u>accord</u> <u>Koon v. Cain</u>, Civ. Action No. 13-2538, 2014 WL 120894, at *5 (W.D. La. Jan. 13, 2014)

("[L]imitations is not reckoned from the date petitioner discovered the factual predicate of his

claim, but rather from the date it 'could have been discovered through the exercise of due diligence

...' [Section 2244(d)(1)(D)] and petitioner bears the burden of establishing that date." (italics

omitted)); <u>Dabbs v. Thaler</u>, No. 3:12-CV-0597, 2012 WL 4442414, at *3 (N.D. Tex. Sept. 5, 2012)

("The petitioner bears the burden of establishing the applicability of section 2244(d)(1)(D),

including his due diligence."), <u>adopted</u>, 2012 WL 4458402 (N.D. Tex. Sept. 26, 2012); <u>Allen v.

Hancock</u>, No. 1:11CV123, 2011 WL 7461993, at *2 (S.D. Miss. Nov. 9, 2011) ("Petitioner bears

the burden in establishing that he exercised due diligence in searching for a factual predicate for

his habeas claim."), <u>adopted</u>, 2012 WL 728546 (S.D. Miss. Mar. 6, 2012); <u>Redmond v. Jackson</u>, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) ("[A] habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims.").

   To meet his burden under Subsection D, a petitioner "must offer an explanation of why the factual predicate could not have been discovered earlier and steps, if any, that were taken to discover his claim." <u>Allen</u>, 2011 WL 7461993, at *2. The instant petitioner simply has not done so. Instead, he merely states that he "received his *voir dire* transcript from his attorney of [sic] August 22, 2019 *via* certified mail. Prior to that, Petitioner had been requesting all trial transcript documentation – which includes *voir dire* transcripts – but they were never produced."[33] That conclusory, unsupported allegation – in which no effort is made to explain when transcript was first requested from counsel, how many such requests were made, what reasons counsel gave for allegedly failing to produce the file promptly, why he did not then pursue the matter expeditiously by filing a complaint against his counsel for refusing to produce the file, or why he did not attempt to procure the file through other means – does not suffice establish that petitioner acted with the required measure of diligence. And, as the state opines in its response, it is reasonable to assume that the transcript could have been obtained much earlier, given that the transcript was received by the clerk of the state district court in **2008** and was obviously in possession of defense counsel as early as **2009** when the appellate brief was filed.[34] In light of those facts, it is unfathomable – especially in the absence of any explanation whatsoever – that petitioner, if he had acted with even

---

[33] Rec. Doc. 11, p. 5.
[34] <u>See</u> Rec. Doc. 10, pp. 12-13.

a minimal degree of diligence, could not have obtained a copy of that transcript much earlier than **2019**.

For these reasons, petitioner has not met his burden to establish that Subsection D applies in this case and that his federal application would be timely under that provision. In the absence of that showing, Subsection A controls, and, for the reasons already explained, his federal application was filed more than **seven years** too late under that subsection.

## <u>RECOMMENDATION</u>

It is therefore **RECOMMENDED** that the federal application filed by Kyle Harry seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___16th___ day of February, 2022.


_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**